UNITED STATES of America,
Appellee,

v.

Larry NEAL and Ronald Journey,
Appellants.

UNITED STATES of America,
Appellee,

v.

Larry ROBINSON, Appellant.

Nos. 75–1418, 75–1421.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1975.

Decided Dec. 10, 1975.

Jeffrey S. Paull, Clayton, Mo., for Neal and Journey.

George Douros, Jr., Clayton, Mo., for Robinson.

Richard A. Heidenry, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before CLARK, Associate Justice,* and LAY and ROSS, Circuit Judges.

LAY, Circuit Judge.

Defendants Larry Neal, Ronald Journey and Larry Robinson were convicted, after trial by jury, for the December 19, 1974 robbery of the Roosevelt Federal Savings and Loan Association in St. Louis, Missouri, in violation of 18 U.S.C. § 2113(a) and (d). On appeal, Neal and Journey allege that blacks were systematically excluded from the jury by the government and that the evidence was insufficient. They contend that the district court erred by admitting certain photographs into evidence and by severing the trial of another robber who testified for the government. Defendant Robinson challenges only his sentence, urging that the trial court erred in denying defense counsel access to the presentence report and that the sentence was excessive. We affirm the convictions of defendants Neal and Journey, but we vacate the sentence of Larry Robinson.

The evidence showed that the robbery was planned and carried out by three men and two women. One of the men, Darryl Bordeaux, testified for the government against the appellants herein. According to Bordeaux, he met at Ronald Journey's apartment with defendants Neal and Journey and the women, Vicky Turner and Prensilla Journey, on December 18, 1974, to plan the crime. Ronald Journey told them that after it had been carried out, they could use the apartment of Larry Robinson, his cousin, as a shelter. Ronald Journey had previously obtained handguns and disguises, including ski masks, for use in the robbery.

About 3:00 P.M. the following day, Ronald Journey, Turner, Neal and Bordeaux drove to the savings and loan in a 1970 Mercury. Prensilla Journey followed in Bordeaux's 1967 Buick which was to be used as a switch car after the robbery. While Ronald Journey waited in the getaway car, Turner, Neal and Bordeaux entered the savings and loan

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

waving guns, and employees immediately activated surveillance cameras. Before the three had donned their ski masks, full face photographs were taken of Neal, Bordeaux and Turner. The robbers took $4,490 from two teller drawers and then fled in the Mercury. A witness took down part of the Mercury's license number at that time. Four blocks away, the four abandoned the Mercury and got into the Buick driven by Prensilla Journey, and then all five went to Larry Robinson's apartment to divide the money.

The F.B.I. identified Darryl Bordeaux from the surveillance photographs, and located and questioned him. He admitted his participation and implicated the others. The F.B.I. then talked to one Gwendolyn Pierson who shared her apartment with Larry Robinson. She told them that Robinson had received at least $200 in cash from the robbery and that he had told her that his cousin committed the crime. She also said that Prensilla Journey had come to the apartment a day or two after the crime to pick up a wig, purse and coat which had been used in it. These articles and others used in the robbery were recovered and identified from the photographs.

■ The various contentions raised by defendants Neal and Journey are without merit. As the summary above indicates, the evidence of their participation was not only sufficient but overwhelming.

■ Their second contention that the government denied them a fair trial by systematically excluding blacks from the jury fails for lack of proof. Only one black was called for the jury panel, but defendants did not then object to the array. Thereafter, the prosecutor used a peremptory challenge to strike that juror. That fact does not make a *prima facie* case of discrimination, however. In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) the Supreme Court stated that the prosecutor's use of peremptory challenges is presumed to be fair and valid, although that presump-

tion may be overcome where sufficient evidence, such as statistical evidence of systematic exclusion of blacks from petit juries for some time, is presented by the defendant. *See Swain v. Alabama, supra* at 222, 85 S.Ct. 824; *United States v. Conley,* 503 F.2d 520, 521–22 (8th Cir. 1974); *United States v. Delay,* 500 F.2d 1360, 1365–66 (8th Cir. 1974). No such proof has been presented here, nor do we think it could be, for as we recently observed:

. . . it is commonly known to members of the Bar who practice in the federal court for the Eastern District of Missouri . . . that blacks serve on jury panels in criminal cases regardless of the color of the skin of the defendant.

*Little v. United States,* 490 F.2d 686, 688 (8th Cir. 1974).

■ Defendants Neal and Journey next assert that the sequential photographs taken by the savings and loan's surveillance cameras should not have been admitted without foundation testimony on the chain of custody. Such testimony is unnecessary. The basic test for admission of such photographs is whether they accurately represent the scene of the crime. Various eyewitnesses in this case verified that the photographs did so, and this is sufficient foundation. *See United States v. Murray,* 523 F.2d 489 (8th Cir. 1975); *United States v. Wilkins,* 477 F.2d 323, 325 (8th Cir. 1973).

■ Defendants Neal and Journey also claim that it was error to sever the trial of defendant Bordeaux and that the government failed to submit a written inventory of all its evidence to the defendants before trial. There is no merit to either claim. No objections were made to the trial court on these grounds. Furthermore, the defendants have failed to demonstrate any prejudice from these alleged errors. Counsel for the defense was permitted to inspect all the government's evidence prior to trial.

Defendant Larry Robinson appeals on grounds different from those relied on

by Neal and Journey. Robinson alleges that the trial court abused its discretion in sentencing and that it erred in denying his counsel access to the presentence report. We hold that Robinson's sentence must be vacated for two reasons: first, that the trial court failed to make certain findings which are necessary prerequisites to sentencing under § 5010(c) of the Youth Corrections Act, 18 U.S.C. § 5005, *et seq.*; and second, that before sentencing defense counsel should have been permitted to review the presentence report and to rebut any inaccuracies in it.

At the time of the offense, Larry Robinson was 19 years old. He had no prior felony convictions and only a minor juvenile record. His part in this crime was small; he aided and abetted the commission of the crime by providing the others the use of his apartment after the robbery for which he was paid about $200.

The trial court sentenced Robinson to ten years under § 5010(c) of the Federal Youth Corrections Act. The court made no finding that a shorter commitment under § 5010(b) would be ineffective, nor did it give any reasons for invoking subsection (c).

The differences between the two subsections are important. Under (b), a youth offender may be sentenced to the custody of the Attorney General for a maximum of six years, and he would be eligible for parole much earlier. *See* 18 U.S.C. §§ 5010(b), 5017(c). Under § 5010(c) however, the youth offender may be sentenced for more than six years, and he would not necessarily be released on parole until all but two years of his term had been served.[1]

Section 5010(c) begins with the words:

If the court shall find that the youth offender may not be able to derive maximum benefit from treatment . . . prior to the expiration of six years . . . it may [sentence under this section] . . . . .

This language indicates that Congress intended that subsection (c) be invoked only after the district court has made the requisite finding on the record.

In *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), the Supreme Court held that before a district judge could sentence a youth under adult provisions, the judge is required by 18 U.S.C. § 5010(d) to find on the record that commitment under the Youth Corrections Act would not benefit the defendant. Congress was concerned, the Court found, to provide some assurance to the defendant that the Act had in fact been considered and determined not beneficial. 418 U.S. at 443, 94 S.Ct. 3042. The Court held that the § 5010(d) language "If the court shall find that the youth offender will not derive benefit . . ." required an express finding in the record. That language is almost identical to the language in § 5010(c), and in view of the seriousness of imposing sentence under subsection (c), we find that Congress intended to make a similar "no benefit" finding a prerequisite to invocation of

---

1.  Section 5010(c) provides:
    If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.

    Section 5017(d) provides:
    A youth offender committed under section 5010(c) of this chapter shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction.

the section. As in *Dorszynski,* this does not mean that the district court must state the reasons relied upon; the court need only recite that it has considered § 5010(b) with its shorter term of commitment and has found that the defendant would not derive maximum benefit prior to the expiration of six years.

█ Such a finding must be express, for the reasoning of Chief Justice Burger in *Dorszynski* prevents us from holding the requisite "no benefit" decision to be implicit. As the Chief Justice observed with reference to § 5010(d):

> The question whether the finding of "no benefit" must be explicit or whether it may be implicit in the record of a particular case, is answered by the manifest desire of Congress to assure that treatment under the Act be considered by the court as one option whenever the youth offender is eligible for it. If the finding may be implied from the record appellate courts must go on to determine what constitutes a sufficient showing of the requisite implication. To hold that a "no benefit" finding is implicit each time a sentence under the Act is not chosen would render section 5010(d) nugatory; to hold that something more is necessary to support the inference that must be found in the record would create an *ad hoc* rule. Appellate courts should not be subject to the burden of case-by-case examination of the record to make sure that the sentencing judge considered the treatment option made available by the Act. Literal compliance with the Act can be satisfied by any expression that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act.

418 U.S. at 443–44, 94 S.Ct. at 3053.

█ Because the required no benefit finding was not made the sentence must be vacated and the defendant resentenced.

On remand, defense counsel should be advised by the trial court of all the relevant, adverse portions of the presentence report and the defendant and his counsel allowed to rebut or explain information alleged to be inaccurate or misleading.

It is true that this court has generally upheld the exercise of discretion by the district courts in not disclosing presentence reports, although we have encouraged disclosure. *United States v. Dace,* 502 F.2d 897 (8th Cir. 1974); *United States v. Schrenzel,* 462 F.2d 765 (8th Cir. 1972); *United States v. MacLeod,* 436 F.2d 947 (8th Cir. 1971). However, in our most recent reappraisal of the matter, we held:

> [W]e deem it appropriate to emphasize that where the presentence report is not disclosed to a defendant, "[i]t is *always* advisable for the trial judge to at least state on the record the various factors he has taken into consideration in rendering his sentence. * * * Such a procedure serves as a checkmate to the danger of misinformation being placed in the hands of the court." *United States v. Carden,* 428 F.2d 1116, 1118 (8th Cir. 1970) (emphasis added). *Failure to do so may well require a vacation of sentence and remand for resentencing under the teachings of Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); and *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

*United States v. Dace,* 502 F.2d 897, 907–08 (8th Cir. 1974) (emphasis added).

In prior cases where the presentence report has been withheld, we have inspected the report *in camera* and satisfied ourselves that it contained no harmful hearsay statements, or that the district court had disclosed to counsel the information relied upon by sentencing. *United States v. Dace,* 502 F.2d 897, 900 (8th Cir. 1974); *United States v. Carden,* 428 F.2d 1116, 1118 (8th Cir. 1970). In the instant case, however, the trial court did not disclose any reasons for so severe a sentence, and we cannot say that the contents of the report are harmless.

Robinson's presentence report says that the defendant is suspected of involvement in another savings and loan robbery in February, 1975. It says that in April, 1975, he was arrested for carrying a weapon but was found to have only ammunition on his person. It states that Robinson was uncooperative in meetings with the probation officers, and includes other statements which might not necessarily be viewed as harmless. The record does not reveal the factors the district court relied upon in imposing the sentence under subsection (c) rather than (b). Certainly, these allegations in the presentence report may have influenced the result.

■ In view of the defendant's minor role in the offense, his lack of a prior record, and the severity of the sentence, we find that defense counsel should on remand be informed of material factors in the presentence report used in determining the sentence and be given the opportunity to rebut or explain it.

The convictions of defendants Ronald Journey and Larry Neal are affirmed. The sentence of defendant Larry Robinson is vacated and the cause remanded for resentencing in accordance with this opinion.