**UNITED STATES of America, Appellee,**

v.

**C.L. CHILDRESS, Appellant.**

**No. 82–1261.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1983.

Decided Sept. 2, 1983.

Certiorari Denied Jan. 9, 1984.

See 104 S.Ct. 744.

Paul J. Schroeder, Jr., Spoehrer & Lemkemeier, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Robert T. Haar, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges, en banc.

McMILLIAN, Circuit Judge.

An all-white jury convicted C.L. Childress on three counts of firearms violations, 18 U.S.C. § 1202(a)(1) (App.), in the District Court[1] for the Eastern District of Missouri. A panel of this court affirmed his conviction, 721 F.2d 1148. Subsequently, this court on its own motion ordered the appeal reargued en banc on the issue of the government's use of peremptory challenges to remove all or almost all the black prospective jurors from the

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of

Missouri.

jury panel. We specifically directed the parties to address a recent Illinois appellate decision, *People v. Payne,* 106 Ill.App.3d 1034, 436 N.E.2d 1046, 62 Ill.Dec. 744 (1982), *appeal docketed,* No. 56709 (Ill. ——, 1983).

For the reasons discussed below, we affirm the judgment of the district court.

## I.

The fundamental obstacle to any successful attack upon the government's use of peremptory challenges to remove all or almost all the black prospective jurors from the jury panel is, of course, *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (*Swain*). In *Swain* the petitioner, a black man convicted of rape in the Circuit Court of Talladega County, Alabama, challenged the selection of the grand jury and petit jury on the ground of racial discrimination in violation of the equal protection clause of the fourteenth amendment. The petitioner's evidence was stark. Black males over 21 constituted 26% of all males in Talladega County over 21, but only 10 to 15% of the grand and petit prospective jurors selected since 1953 were black. In only one case was the percentage of black prospective jurors as high as 23%. Although blacks had served on 80% of the grand juries selected during the same period of time, the number of black grand jurors ranged from one to three. In the petitioner's case, four or five blacks were on the grand jury panel of about 33 and two actually served on the grand jury which indicted him. Although an average of six to seven black prospective jurors were selected for petit jury panels in criminal cases, no black had served on a petit jury since 1950. Moreover, there was evidence that, within the memory of persons then living, no black had ever served on any petit jury in any criminal or civil case tried in Talladega County. In the petitioner's case there were eight black prospective jurors on

the petit jury panel, but two were exempt and the prosecution removed six by peremptory challenge. Thus an all-white jury convicted the petitioner.

As noted by the Supreme Court, *Swain* did not involve the *exclusion* of blacks from grand or petit jury panels. *Id.* at 206, 85 S.Ct. at 828; *e.g., Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880). Nor did *Swain* involve the *token inclusion* of blacks on grand or petit jury panels. *See Cassell v. Texas,* 339 U.S. 282, 292–94, 70 S.Ct. 629, 634–35, 94 L.Ed. 839 (1950) (Frankfurter, J., concurring in the judgment) (panels with only one black juror). *Swain* involved the *underrepresentation* of black prospective jurors on the grand and petit jury panels. The Court noted that

> a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group.

380 U.S. at 208, 85 S.Ct. at 829 (citations omitted). The petitioner showed that the grand and petit jury panels were 10–15% black in a county where the eligible pool of jurors was 26% black. The Court held that this showing of black underrepresentation by 10%[2] did not establish a prima facie case of purposeful discrimination based on race alone. *Id.* at 208–09, 85 S.Ct. at 829–30.

■ The petitioner in *Swain* also argued that the government purposefully used its peremptory challenges to remove black prospective jurors from the petit jury panel in violation of the equal protection clause. The majority reviewed the history, function and nature[3] of the peremptory challenge

---

**2.** Blacks were in fact underrepresented by 50%, although by only 10 percentage points. *See* Note, *Fair Jury Selection Procedures,* 75 Yale L.J. 322, 326 (1966); Kuhn, *Jury Discrimination: The Next Phase,* 41 S.Cal.L.Rev. 235, 253 & nn. 71–74 (1968).

**3.** The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control.... [T]he peremptory permits rejection [of jurors] for a real or imagined partiality that is

and concluded that the exercise of the peremptory challenge by the prosecutor in any particular case was not subject to judicial review. *Id.* at 221, 223, 85 S.Ct. at 836, 837. The Court held that

> [t]he presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.

*Id.* at 222, 85 S.Ct. at 837. Thus, evidence that the government used its peremptory challenges to remove all the black prospective jurors from the jury panel in a single case will not support a claim of racial discrimination under the equal protection clause. The dissent agreed with the single case approach. *Id.* at 245, 85 S.Ct. at 849; *see, e.g., United States v. Greene,* 626 F.2d 75, 76 (8th Cir.) (per curiam), *cert. denied,* 449 U.S. 876, 101 S.Ct. 220, 66 L.Ed.2d 98 (1980); *Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir.1980).

The petitioner in *Swain* also argued that prosecutors in Talladega County had consistently and systematically exercised their peremptory challenges to remove all black prospective jurors from serving on petit juries. The majority stated that evidence that "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes [by peremptory challenge from the jury panel] . . . with the result that no Negroes ever serve on petit juries," 380 U.S. at 223, 85 S.Ct. at 837, would show that "the purpose of the peremptory challenge [is] being perverted" and thus rebut the presumption that the prosecutor was using the peremptory challenge to obtain a fair and impartial jury. *Id.* at 224, 85 S.Ct. at 838. The *Swain* majority found, however, no prima facie case of systematic exclusion because the record failed to show "when, how often, and under what circumstances the prosecutor alone has been responsible for striking those Negroes who have appeared on the petit jury panels in Talladega County." *Id.* The majority also rejected any attempt to show systematic exclusion by combining the method of selecting prospective jurors and the use of peremptory strikes. *Id.* at 228 n. 32, 85 S.Ct. at 840 n. 32.

On a theoretical level the dissent argued that the majority unconstitutionally granted a preference to the state's free exercise of the peremptory challenge, a nonconstitutional right generally "recognized primarily as a device to protect *defendants,*" *id.* at 242, 85 S.Ct. at 847 (Goldberg, J., dissenting) (emphasis in original), over the defendant's constitutionally guaranteed right to equal protection. *Id.* at 242–44, 85 S.Ct. at 847–48. The dissent also argued that the petitioner's evidence clearly established a prima facie case of discrimination. *Id.* at 232, 85 S.Ct. at 842. The dissent criticized the majority's requirement that the petitioner show the state alone caused systematic exclusion, particularly when the state is responsible for the selection of disproportionately white panels of prospective jurors, *id.* at 235–37, 85 S.Ct. at 843–45; the major-

---

less easily designated or demonstrable. It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another," upon a juror's "habits and associations," or upon the feeling that "the bare questioning [a juror's] indifference may sometimes provoke a resentment." It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. . . . [V]eniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried. *Swain v. Alabama,* 380 U.S. 202, 220–21, 85 S.Ct. 824, 835–36, 13 L.Ed.2d 759 (citations and footnote omitted) (1965).

ity's distinction between exclusion from the jury panel and exclusion from the jury itself, *id.* at 239–40, 85 S.Ct. at 846–47; and the majority's refusal to consider the fact that "the total exclusion of Negroes from juries in Talladega County results from the interlocking of an inadequate venire selection system, for which the State concededly is responsible, and the use of peremptory challenges." *Id.* at 241, 85 S.Ct. at 847.

## II.

The very heavy burden of proof set forth in *Swain* has been extensively criticized by commentators. *See, e.g.,* Brown, McGuire & Winters, *The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse,* 14 New Eng.L. Rev. 192, 196–202 (1978) (hereinafter Brown Article); Kuhn, *Jury Discrimination: The Next Phase,* 41 S.Cal.L.Rev. 235, 302 (1968); Winick, *Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and A Constitutional Analysis,* 81 Mich.L.Rev. 1, 10–11 (1982) (using *Swain* to attack exclusion of "death qualified" jurors); *The Supreme Court, 1964 Term,* 79 Harv.L.Rev. 56, 135–39 (1965); Comment, *The Prosecutor's Exercise of the Peremptory Challenge to Exclude Nonwhite Jurors: A Valued Common Law Privilege in Conflict with the Equal Protection Clause,* 46 U.Cin.L.Rev. 554, 559–60 (1977); Comment, Swain v. Alabama: *A Constitutional Blueprint for the Perpetuation of the All-White Jury,* 52 Va.L.Rev. 1157, 1160–63 (1966); Note, *Limiting the Peremptory Challenge: Representation of Groups on Petit Juries,* 86 Yale L.J. 1715, 1723 & n. 36 (1977). Although case law repeatedly describes the defendant's burden of proof as "not insurmountable," *e.g., United States v. Pollard,* 483 F.2d 929, 930 (8th Cir.1973), *cert. denied,* 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974); *United States v. Pearson,* 448 F.2d 1207, 1217–18 (5th Cir.1971), defendants in state and federal courts have been overwhelmingly unable to establish a prima facie case of systematic exclusion. Our re-

search indicates that a defendant has successfully established systematic exclusion in only two cases since *Swain* was decided in 1965. *State v. Brown,* 371 So.2d 751 (La. 1979) (using statistics but not statistical methods) (prosecutor used only five peremptory challenges, all against black prospective jurors; two attorneys testified that the prosecutor used peremptory challenges almost exclusively to remove black prospective jurors; since 1972 the court had reviewed more than fifteen cases from that particular parish, including nine cases tried by this prosecutor, in which defendants had alleged that the prosecutor used peremptory challenges to remove black prospective jurors); *see State v. Washington,* 375 So.2d 1162 (La.1979) (same statistical evidence, same prosecutor and same parish at issue in *Brown;* plus admission by prosecutor of discriminatory use of peremptory challenges). *See also United States v. Robinson,* 421 F.Supp. 467 (D.Conn.1976) (systematic exclusion found using statistics), *rev'd sub nom. United States v. Newman,* 549 F.2d 240 (2d Cir.1977) (disagreeing with district court's analysis of statistics); *United States v. McDaniels,* 379 F.Supp. 1243 (E.D. La.1974) (district court found no systematic exclusion where the government used all six peremptory challenges against black prospective jurors, but granted new trial in interests of justice).

There are several reasons for this remarkable lack of success. First, the Supreme Court did not explain what it meant by "systematic exclusion over a long period of time" and never set forth the elements of a prima facie case. *See* Comment, 46 U.Cin.L.Rev. at 560. The majority in *Swain* held only that unexplained systematic exclusion would violate the equal protection clause and that the record did not show systematic exclusion. Whatever the precise elements of a prima facie case of systematic exclusion, the fact that the majority found the record in *Swain* was inadequate must have been particularly discouraging. As noted, the record in *Swain* showed that although 26% of the county population eligi-

ble for jury service was black and 10–15% of the jury panels selected were black, no black within the memory of persons then living had ever served on any petit jury in any civil or criminal case in Talladega County. Second, the individual defendant is unlikely to have either the time or the resources to compile and analyze the raw data necessary to a statistical attack on the prosecution's use of peremptory challenges. Moreover, often there is simply no information available about the racial identity of prospective jurors or about the government's use of peremptory strikes in other trials. *See United States v. Robinson,* 421 F.Supp. 467 (apparently statistics compiled by federal public defender with assistance of law student); Brown Article, 14 New Eng.L.Rev. at 222–23 (suggesting that public defenders assume task of systematic long-term recordkeeping about prosecutors' use of peremptory strikes); Comment, *A Case Study of the Peremptory Challenge: A Subtle Strike at Equal Protection and Due Process,* 18 St. Louis U.L.J. 662 (1974) (use of newspaper reporter's statistics obtained by observation in court). The lack of data about other trials is particularly important because the majority held, and the dissent in *Swain* agreed, that the prosecutor's use of peremptory strikes to remove all black prospective jurors *in a single case* was not enough to prove systematic exclusion. 380 U.S. at 222, 245, 85 S.Ct. at 837, 849. Finally, even assuming the existence and availability of data,[4] statistical analysis may prove to be problematical. One commentator has noted that because the peremptory challenge may be legitimately exercised on nonracial grounds that might correlate with group affiliation and because the statistical characteristics of the underlying population are unlikely to be known adequately, it may be impossible to factor in the likelihood that in any given case a juror will be legitimately removed, either for cause or by peremptory challenge. Finkelstein, *The Application of Statistical Decision Theory to the Jury Discrimination Cases,* 80 Harv.L.Rev. 338, 352 (1966).

Defendants' lack of success in satisfying the heavy burden of proof set forth in *Swain* has prompted renewed criticism by commentators and, after *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), renewed examination by the state courts. *See generally* Brown Article, 14 New Eng.L.Rev. 192; Note, *The Defendant's Right to Object to Prosecutorial Misuse of the Peremptory Challenge,* 92 Harv. L.Rev. 1770 (1979); Note, *Limiting the Peremptory Challenge: Representation of Groups on Petit Juries,* 86 Yale L.J. 1715. *But see generally* Saltzburg & Powers, *Peremptory Challenges and the Clash Between Impartiality and Group Representation,* 41 Md.L.Rev. 337 (1982) (advocating general reform of juror selection process rather than limitation of peremptory challenge); Note, *Peremptory Challenges and the Meaning of Jury Representation,* 89 Yale L.J. 1177 (1980). In *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 761–62, 148 Cal. Rptr. 890 (1978), the California Supreme Court held that the California constitution prohibited the prosecutorial use of peremptory challenges to remove prospective jurors on the sole ground of group bias. The Massachusetts Supreme Judicial Court followed a similar analysis in *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499, 510–11, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), and based its holding on the jury trial guarantee in the Massachusetts Declaration of Rights, art. 12. *Accord Commonwealth v. Martin,* 461 Pa. 289, 299, 336 A.2d 290, 295 (1975) (Nix, J., dissenting); *Commonwealth v. Jones,* 246 Pa.Super. 521, 371 A.2d 957, 960 (1977) (Spaeth, J., concurring); *cf. States v.*

---

**4.** As discussed in the text, defendants who have used a statistical method of attacking the prosecution's use of peremptory strikes have confronted problems in the interpretation of the data. For example, courts have challenged the combination of statistics from divisions with a district, time periods or prosecutors within a particular district. *See United States v. Newman,* 549 F.2d 240 (2d Cir.1977).

*Eames,* 365 So.2d 1361, 1364–73 (La.1978) (Dennis, J., concurring) (state equal protection clause); *State v. Crespin,* 94 N.M. 486, 612 P.2d 716 (Ct.App.1980) (apparently relying on state constitution).

Although the courts in *Wheeler* and *Soares* relied upon their respective state constitutions, both courts contended that their holdings were consistent with federal constitutional law and thus independently supported by the sixth amendment guarantee of a petit jury selected from a representative cross section of the community. *See Taylor v. Louisiana,* 419 U.S. at 528, 95 S.Ct. at 696; *People v. Wheeler,* 583 P.2d at 757, 148 Cal.Rptr. at 899; *Commonwealth v. Soares,* 387 N.E.2d at 510–12. We were interested in the *Payne* decision because *Payne* squarely relied upon the sixth amendment to limit the prosecutorial use of peremptory challenges to remove blacks and other groups from trial juries. 436 N.E.2d at 1051–52, 62 Ill.Dec. at 749–50. We were intrigued by the *Payne* analysis and its potential as a means of addressing the problems of proof encountered by defendants attempting to establish systematic exclusion under *Swain,* problems of proof with which this court is well acquainted. *See United States v. Nelson,* 529 F.2d 40 (8th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976); *United States v. Carter,* 528 F.2d 844 (8th Cir.1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 206 (1976). After careful consideration of *Payne,* we must reluctantly conclude that there is no sixth amendment exception to the equal protection analysis in *Swain. See People v. Williams,* 97 Ill. 2d 252, 73 Ill.Dec. 360, 454 N.E.2d 220, 33 Crim.L.Rep. (BNA) 2215 (Ill. May 27, 1983) (following *Swain* ); *People v. Davis,* 95 Ill.2d 1, 447 N.E.2d 353, 360, 69 Ill.Dec. 136, 143 (1983) (following *Swain* ); *People v. Teague,* 108 Ill.App.3d 891, 439 N.E.2d 1066, 64 Ill.Dec. 401 (1982) (following *Swain* ), *petition for leave to appeal denied,* 449 N.E.2d 820, 70 Ill.Dec. 473 (Ill.1983); *People v. McCray,* 57 N.Y.2d 542, 443 N.E.2d 915, 457 N.Y.S.2d 441 (1982) (following *Swain* and rejecting *Payne* analysis), *cert. denied,* —— U.S. ——, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). *But see People v. Gosberry,* 449 N.E.2d 815, 816–20, 70 Ill.Dec. 468 (Ill.1983) (Simon, J., dissenting).

### III.

The principal significance of the *Payne* decision is its holding that the sixth amendment guarantee to a jury drawn from a representative cross section of the community applies not only to the selection of the jury panel but also to the selection of the trial jury. 436 N.E.2d at 1047–48, 62 Ill. Dec. at 745–46. The *Payne* court reasoned that

> [t]he desired goal of interaction of a cross section of the community does not occur within the venire, but rather, is only effectuated by the petit jury that is selected and sworn to try the issues. It follows that the systematic exclusion of prospective jurors solely because of their race is equally invidious and unconstitutional at any stage of the jury selection, *i.e.,* from the time the general jury list is prepared by the jury commissioner until the jury is actually selected and sworn. If we were to hold otherwise, the constitutional right to a jury drawn from a fair cross section of the community could be rendered a nullity through the use of peremptory challenges.

436 N.E.2d at 1048, 62 Ill.Dec. 746; *see Hall v. United States,* 83 U.S.App.D.C. 166, 168 F.2d 161, 166 (1948) (Edgerton, J., dissenting) (arguing that rule against exclusion of blacks from the jury panel has no value if those who appear on the panel may be systematically removed from the jury by peremptory challenge); *see generally* Kuhn, *Jury Discrimination: The Next Phase,* 41 S.Cal.L.Rev. at 289 & n. 223; Note, *Limiting the Peremptory Challenge: Representation of Groups on Petit Juries,* 86 Yale L.J. at 1731–32. The *Payne* court then discussed the role of the prosecutor and the trial court in guaranteeing the sixth amendment right to a jury drawn from a fair

cross section of the community and concluded that

> [t]he right to a peer jury is effectively diminished in any case if the overzealous prosecutor is able by affirmative means to systematically exclude available and otherwise competent Blacks from the jury solely because they are Blacks.
>
> . . . .
>
> . . . Plainly, the appearance of justice is not fulfilled if the trial court acquiesces in, condones or fails to preclude attempts by the prosecuting attorney to exclude Blacks from the jury solely because they are Blacks.

*Id.* 436 N.E.2d at 1049, 62 Ill.Dec. at 747.

Having thus established the constitutional basis for the right to trial by a jury drawn from a fair cross section of the community, the *Payne* court concluded that the peremptory challenge, a statutory procedure not guaranteed by the constitution, must yield to the constitutional right. *Id.* at 1049–50, 62 Ill.Dec. at 747–48. The court held that

> when it reasonably appears to the trial court, either by its own observation or after motion by the defendant, that the prosecuting attorney is using peremptory challenges to systematically exclude Blacks from the jury solely because they are Blacks, the court should require the prosecutor to demonstrate, by whatever facts and circumstances exist, that Blacks were not being systematically excluded from the jury solely because they were Blacks. At this stage, the burden of demonstrating that the Constitution was not being violated is upon the prosecution. Also, at this stage, the trial court should not employ any presumption that the Constitution is not being violated. Once it reasonably appears to the trial court that the accused is being affirmatively denied an impartial jury as required under the 6th Amendment, there is no reason to presume that the State is not affirmatively violating the accused's constitutional entitlement.

*Id.* at 1050, 62 Ill.Dec. at 748.

The *Payne* court then rejected the state's argument that its use of peremptory challenges was insulated from judicial inquiry by *Swain,* stating:

> [w]e believe that *Duncan* [*v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968),] and *Taylor* [*v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975),] together have significantly changed the law from the time *Swain* was decided, vis-a-vis the 6th Amendment right of an accused in a state trial to a jury drawn from a fair cross section of the community and the prohibition of the State's affirmative frustration of that right. At the time *Swain* was decided, the 6th Amendment had not yet been recognized as applicable to State criminal trials, and the accused's 6th Amendment right to a jury drawn from a fair cross section of the community and the prohibition of the State's affirmative frustration of that right were neither raised nor discussed in *Swain.* . . .
>
> Accordingly, *Swain* does not apply to an accused's right not to have the State affirmatively frustrate his 6th Amendment right to a jury drawn from a fair cross section of the community, which is the constitutional issue underlying a decision in this case [, not the equal protection clause]. We therefore apply *Taylor* and its rationale to this case rather than *Swain,* and we conclude that the 6th Amendment precludes the State, *i.e.,* the prosecuting attorney, from affirmatively frustrating the right of the accused to a jury drawn from a fair cross section of the community by utilizing peremptory challenges to exclude Blacks from the jury solely because they are Black.

*Id.* at 1052, 62 Ill.Dec. at 750 (footnote omitted).

The extension of *Taylor v. Louisiana* from the venire to the petit jury has much logical and practical appeal. *See generally* Kuhn, *Jury Discrimination: The Next Phase,* 41 S.Cal.L.Rev. at 289 & n. 223; Note, *Limiting the Peremptory Challenge: Representation of Groups on Petit Juries,* 86 Yale L.J. at 1731–32. However, the Su-

preme Court in *Taylor* expressly limited the fair cross section of the community holding to the venire, not the petit jury. The Court stated that

> in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

419 U.S. at 538, 95 S.Ct. at 702 (citations omitted). *See generally* Note, 92 Harv.L. Rev. at 1779–80; Note, *Peremptory Challenges and the Meaning of Jury Representation,* 89 Yale L.J. at 1184–98. Although the sixth amendment was not applied to state trials until after *Swain* was decided, *see Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and the nature of that right not clarified until 1975, *see Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, federal courts reviewing allegations of prosecutors' discriminatory use of peremptory challenges in federal trials have consistently followed, before and after the decision of *Taylor v. Louisiana,* the systematic exclusion analysis set forth in *Swain. See Taylor v. Louisiana,* 419 U.S. at 526–27, 95 S.Ct. at 695–96.

Thus, we are not convinced that *Taylor* and its sixth amendment analysis have in effect overruled *Swain* and now restrict the government's use of the peremptory challenge to remove black prospective jurors. This does not mean that we entirely disapprove of the *Payne* analysis, rather we believe that any attack upon the government's use of the peremptory challenge must squarely confront *Swain. See McCray v. New York,* —— U.S. ——, 103 S.Ct. 2438, 2440–43, 77 L.Ed.2d 1322 (1983) (order denying petition for writ of certiorari) (Marshall, J., dissenting) (arguing that sixth amendment principles have evolved significantly since *Swain* and that *Swain* should be reconsidered). The Supreme Court has not reconsidered *Swain* and until that time, of course, we must follow *Swain.*

## IV.

■ Appellant has shown only that in his case the government removed four of the five black prospective jurors by peremptory challenge.[5] The remaining black prospective juror was removed by the defense by

---

5. The transcript of the voir dire proceedings did not identify the prospective jurors by race; however, the five black prospective jurors were identified in the Supplemental Reply Brief for Appellant at 7 and have not been disputed by the government.

We have carefully examined the transcript of the voir dire proceedings. The district judge first asked each prospective juror general questions, such as whether any prospective juror was related to or knew the defendant, the investigative agents, or the attorneys or had any prior legal relationship with the attorneys. The district judge also asked whether the minority status of the defendant would influence any of the jurors. The district judge also asked whether any prospective juror was familiar with the location of the incident (two of the black prospective jurors were), whether any prospective juror would give more (or less) credibility to the testimony of law enforcement officers, and whether any prospective juror would be influenced by allegations of drug transactions or by the involvement of firearms. The district judge then asked each prospective juror where they lived (city or county), their occupation, and, if married, the occupation of the spouse.

From this limited information, it is possible to construct the following profile of the trial jurors: white (all twelve), not young (this represents a mere guess; based upon such factors as the years of marriage and years of employment), not city residents (10 of 12 lived in the counties surrounding the City of St. Louis), married (10 of 12), male (7 of 12), employed, and probably more or less middle class. This profile is admittedly speculative. However, as noted by one commentator, "[t]he prosecution, in cases involving black defendants, frequently looks for a juror who is middle-aged, middle-class, and white, on the assumption that this juror identifies with the government rather than the defendant." Note, *Limiting the Peremptory Challenge: Representation of Groups*

peremptory challenge. Appellant has produced no additional information and has not attempted to prove systematic exclusion. This single case record will not justify relief under *Swain. See, e.g., United States v. Capers,* 685 F.2d 249, 250 n. 2 (8th Cir.1982) (per curiam); *United States v. Boykin,* 679 F.2d 1240, 1245 (8th Cir.1982); *United States v. Greene,* 626 F.2d at 76. Accordingly, the judgment of the district court is affirmed.

### V.

As noted above, this court has frequently reviewed allegations that federal prosecutors have used peremptory challenges to remove all or almost all black prospective jurors from trial juries. *See, e.g., United States v. Jackson,* 696 F.2d 578, 592 (8th Cir.1982) (listing cases from the Western District of Missouri), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983).[6] *See also United States v. Capers,* 685 F.2d at 250 n. 2 (Eastern District of Missouri); *United States v. Boyd,* 610 F.2d 521, 526 (8th Cir.1979) (District of Minnesota), *cert. denied,* 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); *United States v. Neal,* 527 F.2d 63, 65 (8th Cir.1975) (Eastern District of Missouri), *cert. denied,* 429 U.S. 845, 97 S.Ct. 125, 50 L.Ed.2d 116 (1976); *United States v. Delay,* 500 F.2d 1360, 1366 (8th Cir.1974) (Eastern District of Missouri); *United States v. Pollard,* 483 F.2d at 930 (Eastern District of Missouri). *Cf. Hamp-*

*ton v. Wyrick,* 606 F.2d 834 (8th Cir.1979) (habeas corpus petition from Missouri prisoner), *cert. denied,* 444 U.S. 1022, 100 S.Ct. 681, 62 L.Ed.2d 654 (1980). Racial discrimination can have no place in a society and legal system committed to equal justice under the law. Therefore, we remind trial courts that

> the potential for racially motivated misuse of the government's peremptory challenges might be minimized if the trial court exercised its "supervisory powers over the trial of criminal cases ... [by requiring] the prosecutor to discharge his [or her] duties in a fair, even, and constitutional manner, and thus ensure that no potential juror is denied the privilege of serving upon a jury solely because of his [or her] race."

*United States v. Jackson,* 696 F.2d at 592–93, *citing United States v. Nelson,* 529 F.2d at 43.[7]

ROSS, Circuit Judge, concurs in the result only.

JOHN R. GIBSON, Circuit Judge, concurs in Parts IV and V of the opinion.

---

*on Petit Juries,* 86 Yale L.J. 1715, 1724 n. 37 (1977).

Similarly, the information about the black prospective jurors is very limited. They appear to be relatively diverse individuals. Of the four challenged by the government, three were women, two were single and unemployed at that time, one was married and had retired. The fourth was a married truck driver; his wife was a mail clerk. The prospective juror removed by the defense, possibly because his son-in-law was a police officer, was a married supervisor at a clothing manufacturer; his wife was employed by a service company.

**6.** One of the five cases cited by the court involved the District of Minnesota; one may substitute *United States v. Boykin,* 679 F.2d 1240 (8th Cir.1982), for *United States v. Boyd,* 610

F.2d 521 (8th Cir.1979), *cert. denied,* 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980).

**7.** In *United States v. Jackson* the district court granted a pretrial defense motion "to prevent the use of peremptory challenges by the prosecution to strike black or other minority members from the jury ... unless the government can show good reason why a black or other minority member should be stricken from the jury panel," and carefully questioned the prosecutor about each peremptory strike exercised against a black prospective juror. 696 F.2d 578, 593 (8th Cir.1982) (footnote omitted), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983).