**UNITED STATES of America, ex rel. Frank TEAGUE, Petitioner-Appellant,**

v.

**Michael P. LANE, Director, Department of Corrections and Michael O'Leary, Warden, Stateville Correctional Center, Respondents-Appellees.**

No. 84–2474.

United States Court of Appeals, Seventh Circuit.

Dec. 30, 1985.

Patricia Unsinn, Chicago, Ill., for petitioner-appellant.

Mark Rotert, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Judge, and BAUER, WOOD, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

### ORDER

This case was argued on April 9, 1985 to a panel consisting of Judges Cudahy and Coffey, together with Senior Circuit Judge John W. Peck of the Sixth Circuit, sitting by designation.

Pursuant to Circuit Rule 16(e), the panel opinion in this case was circulated to all the judges of the court in regular active service. A majority of the judges in regular active service have voted to rehear this case *en banc,* the time of argument to be set at a date convenient to the court.

CUDAHY, Circuit Judge, dissenting.

This case involves the question whether the Constitution prohibits prosecutors from using their peremptory challenges to exclude potential jurors exclusively on the basis of race. The matter was originally heard by a panel consisting of Judge Coffey, Senior Circuit Judge John W. Peck of the Sixth Circuit, sitting by designation, and me. The panel opinion, which I wrote, vacated and remanded on the grounds that the exercise of peremptory challenges by the prosecutor in this case violated, at least prima facie, the defendant's Sixth Amend-

---

ment right to an impartial jury. The panel opinion, together with a dissent by Judge Coffey, was then circulated under our Circuit Rule 16 to the full court, which voted to rehear the matter *en banc.* I shall briefly outline here the essential content of the opinion of the panel majority to indicate why I believe that *en banc* review is unnecessary. Judge Peck has requested that I record his agreement with the views which follow.

Frank Teague, a black, was tried before a jury in an Illinois court and convicted of attempted murder and armed robbery. Each side had ten peremptory challenges and the state exercised all of its challenges to exclude black jurors. The defense also challenged one black, and there were no blacks on the resulting jury.

The defense moved for a mistrial, arguing that the state was denying Teague a trial by a jury of his peers by excluding potential jurors on the basis of race. These motions were denied. Although, as things now stand, a prosecutor need not defend his peremptory challenges, the state offered two rationales for its actions: that it was attempting to obtain a balance of men and women on the jury and that it had excused a number of young people. The Illinois Appellate Court noted that the record did not support the state's explanation but held that under existing law it could place no restriction on a prosecutor's use of his peremptory challenges.

The precise issue raised was whether a defendant's Sixth Amendment rights are violated when a prosecutor uses his peremptory challenges to exclude members of one race from a petit jury. Such a use is not a violation of the Equal Protection Clause of the Fourteenth Amendment, so long as the exclusion does not prevent members of a race from *ever* sitting on juries, "in case after case, whatever the circumstances, whatever the crime, and whoever the defendant or victim may be." *Swain v. Alabama,* 380 U.S. 202, 223, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965). *Swain* was clearly decided on equal protection grounds and, although the Court did

not question the standing of the defendant Swain, the rights asserted and addressed by the Court were in large measure the rights of blacks who were prevented from serving as jurors. But the right to sit on a jury is quite distinct from the right of a defendant to be tried by a jury from which members of his race have not been systematically excluded.

The Fourteenth Amendment guarantees due process as well as equal protection, but at the time *Swain* was decided it was not yet settled which jury-trial rights were guaranteed by that amendment's due process clause. We now know that the Sixth Amendment applies fully to the states through the Fourteenth Amendment, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); what has not been resolved is whether the Sixth Amendment guarantees the right to a jury from which eligible jurors have not been excluded because of their race. This question was raised but not decided in two recent cases in this circuit. *See United States v. Clark,* 737 F.2d 679 (7th Cir.1984) (facts of case failed to raise presumption of racial motivation); *United States ex rel. Palmer v. DeRobertis,* 738 F.2d 168 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984) (habeas petitioner waived objection by failing to raise it in state court). Other circuits have split on the question, *compare Weathersby v. Morris,* 708 F.2d 1493, 1497 (9th Cir.1983), *and United States v. Childress,* 715 F.2d 1313 (8th Cir.1983) (no Sixth Amendment right), *with McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984), *and Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), and the Supreme Court has heard oral argument on this question in an appeal from a state supreme court, *Batson v. Kentucky,* —— U.S. ——, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985).

As Judge Peck and I have viewed it, the question presents a clash between two devices, the peremptory challenge and the requirement of representativeness in the jury pool, both of which are intended to secure an impartial jury and neither of which we wanted to see destroyed. For

the most part they do not conflict, but when they do, one must give way partially so that neither will be destroyed.

The Sixth Amendment guarantees that the jury pool from which a jury is selected must contain a representative cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The representativeness requirement does not extend directly to the petit jury—no defendant can demand a perfect cross-section on his jury—but the fact that there is not a direct connection does not mean that there is no connection at all. If the Sixth Amendment has implications for the jury pool, that can only be because it has some implication for the jury that actually sits at trial. In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Supreme Court held that a six-person jury was constitutionally acceptable, noting that a jury should be large enough "to promote group deliberation, free from outside attempts at intimidation, and to provide a *fair possibility for obtaining a representative cross-section* of the community." *Id.* at 100, 90 S.Ct. at 1906 (emphasis added). In *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), it held that a five-person jury was not, expressing concern about "the ability of juries truly to represent the community as membership decreases below six." *Id.* at 242, 98 S.Ct. at 1040. Although the Sixth Amendment does not guarantee a representative trial jury, it does appear to guarantee the *possibility* of a representative jury. In the absence of that possibility, the negative effect upon defendants who belong to the group excluded is not difficult to imagine; it will be especially severe where the group suffers from community prejudice. Judge Peck and I thought it beyond dispute, therefore, that the Sixth Amendment's protection lies in its requirement that the state cannot interfere with the possibility that the jury will be representative.

There is no constitutional right to peremptory challenges, *Swain,* 380 U.S. at 219, 85 L.Ed.2d at 835, but the peremptory challenge has a long history, serves an important function and should not lightly be narrowed. The peremptory challenge allows each side to eliminate jurors whom it suspects, for reasons it cannot articulate or for reasons not reaching the level of cause, of being partial to the other side. With peremptory challenges, the resulting jury should be closer to the ideal of a body without sympathies for either side. And yet the peremptory challenge may conflict with the goal of securing to each defendant the possibility of a representative jury, for with enough peremptory challenges, a prosecutor can, if he chooses, make sure that members of a minority group do not appear on any jury where their presence would be a hindrance to him.

Judge Peck and I therefore believed that the only option open to the court in these circumstances was to limit the peremptory challenge in some way. We did not believe that this mechanism for insuring jury impartiality would be destroyed if abuses of it were made subject to objection. We therefore suggested a limitation that we think would be the least intrusive while complying with the demands of the Sixth Amendment. Rather than reduce the number of peremptory challenges, as some have suggested, we sought to limit the prosecutor with a procedure that would screen out only cases of discriminatory abuse. Two circuits have placed such limits on the use of the peremptory challenge to avoid violating the Sixth Amendment. *See Booker v. Jabe, supra,* and *McCray v. Adams, supra.* A number of other circuits have done so as an exercise of their supervisory powers. *See United States v. Leslie,* 759 F.2d 366 (5th Cir.1985) (*en banc*); *United States v. Jackson,* 696 F.2d 578, 593 (8th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). *See also United States v. McDaniels,* 379 F.Supp. 1243, 1249 (E.D.La.1974). State supreme courts have followed a similar route, *see State v. Neil,* 457 So.2d 481 (Fla.1984); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

According to the procedure adopted by these courts and suggested by Judge Peck and me, the defendant would have to raise a timely objection and make out a prima facie case by showing that the persons excluded were members of a cognizable and suspect group and that those challenged were more likely to have been challenged because of the group they belong to than because of any specific bias. Once the prima facie case was made, it would be up to the prosecutor to rebut it. The appropriate rebuttal would involve bias, of course, because bias is supposed to be the reason for the challenges in the first place. The prosecutor's rationale would not have to be one that would sustain a challenge for cause, but it would have to be both race-neutral and supported by the record. This procedure would not prevent the prosecutor from excluding two, or three, or four of a given race; but it would prevent him from either using *all* of his peremptories to exclude members of a race, or from using his peremptories to systematically exclude all members of a race. All of this would fall short of destroying the peremptory challenge. The prosecutor would be free to use his challenges as he chose, so long as he did not use them for the impermissible purpose of systematically excluding blacks, or members of one cognizable group, from the petit jury.

For these reasons, which were set forth at length in the proposed panel opinion, I think *en banc* review unnecessary and I therefore respectfully dissent from the order directing rehearing *en banc.*