UNITED STATES of America, Appellee,

v.

Leonard McCRACKEN, Appellant.

No. 77–1966.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1978.

Decided Aug. 15, 1978.

Thomas H. Jenson, Foster, Jenson & Short, Minneapolis, Minn., for appellant.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief.

Before LAY, HEANEY and ROSS, Circuit Judges.

LAY, Circuit Judge.

■■■■ This is an appeal from a conviction on seven counts of mail fraud, 18 U.S.C. § 1341, and one count of conspiracy to commit mail fraud. 18 U.S.C. § 371. The defendant Leonard McCracken was sentenced to 30 months. On appeal McCracken's principal challenge is that the government's proof was insufficient to sustain the jury's finding as to the requisite intent required to prove each count.[1] Upon review of the record we find sufficient evidence to sustain the conviction on all counts.

McCracken, together with Ronald Gilbertson and George Conzemius, was indicted with a scheme to defraud the Hastings Co-op Elevator Association [Hastings] through the use of two corporations, Upper Midwest Fertilizer, Chemicals and Commodities, Inc. [Upper Midwest], and Rice County Fertilizer Company [Rice County], in which the above named individuals were owners and officers.[2] Hastings was a farmer-owned cooperative whose principal business was the purchase and sale of fertilizer, feeds and grain. Gilbertson served as its general manager from 1971 until his discharge in April 1975. From the fall of 1972 until the fall of 1974, McCracken, who was

---

1. McCracken also asserts that he did not receive effective assistance of counsel. He claims that counsel failed to cross-examine effectively the government's witnesses. Our review of the record reveals that there exists no factual or legal basis to sustain this conclusory claim. As we have stated many times the exercise of reasonable judgment, even when hindsight reveals a mistake in that judgment, does not sustain a claim that the lawyer was ineffective or incompetent in rendering his service. *See Reynolds v. Mabry,* 574 F.2d 978, 979 (8th Cir. 1978); *Robinson v. United States,* 448 F.2d 1255, 1256 (8th Cir. 1971).

2. Gilbertson and Conzemius were also convicted in separate trials for mail fraud and conspiracy. At this writing their appeals are under submission to this court.

hired by Gilbertson, managed the elevator's fertilizer operation. Conzemius was a farmer-member of Hastings.

The indictment alleged, *inter alia*, that McCracken, together with Gilbertson and Conzemius, established Upper Midwest and Rice County as part of the scheme to defraud Hastings by diverting carload shipments of fertilizer from Hastings through Upper Midwest and Rice County to their own customers whereby they, rather than Hastings, profited. In addition the indictment alleged that direct sales of fertilizer to Hastings were also diverted through Upper Midwest at increased prices to Hastings. The indictment further alleged that the Board of Directors of Hastings was never informed of this scheme or of McCracken's or Gilbertson's conflicts of interest in the operation of Upper Midwest or Rice County.

*The Government's Evidence.*

In late 1973 and continuing through 1974 a shortage in the supply of fertilizer developed which forced the price of fertilizer upward drastically. Also because of the shortage Hastings' principal suppliers of fertilizer were forced to put their member co-ops, including Hastings, on allocation programs. When it appeared that Hastings' allocation under those programs would be insufficient to meet its needs, McCracken began buying fertilizer on the open market. In addition McCracken left a standing order with one of Hastings' principal suppliers to ship whatever fertilizer was available. Because of McCracken's activities Hastings had more than enough fertilizer for its customers. Subsequently, in the spring of 1974, McCracken began selling some of Hastings' carloads of fertilizer on the open market. Three sales which McCracken culminated in early May 1974 realized a gross profit to Hastings in excess of $30,000.

On May 22, 1974, while still employed by Hastings, McCracken, with Gilbertson and Conzemius, incorporated Upper Midwest Fertilizer, Chemical and Commodity, Inc. McCracken was named president, Gilbertson was named vice-president and Conzemius was named secretary-treasurer. A mailing address and checking account for Upper Midwest were established. Both McCracken and Conzemius signed the signature card for Upper Midwest's checking account, although the evidence showed that only Conzemius signed Upper Midwest's checks.

The evidence further showed that upon the formation of Upper Midwest McCracken began ordering fertilizer to be shipped directly to Hastings from one of Hastings' suppliers. The fertilizer was billed through Upper Midwest, however, and then sold to Hastings at an increased price. Testimony established that the supplier for these transactions previously had supplied Hastings and would have sold the fertilizer directly to Hastings for the same price given Upper Midwest. This pattern of purchasing fertilizer to be shipped directly to Hastings at increased prices by sending the billing through Upper Midwest continued intermittently through the early spring of 1975 at a gross profit to Upper Midwest in excess of $8,000.

In addition to the above activities the evidence established that McCracken on behalf of Upper Midwest began purchasing carloads of fertilizer from Hastings for resale by Upper Midwest. For these transactions McCracken wore two hats, one as sales agent for Hastings and one as purchasing agent for Upper Midwest. As sales agent for Hastings McCracken sold 18 carloads of fertilizer to Upper Midwest at prices slightly above Hastings' costs but considerably less than open market prices. As agent for Upper Midwest McCracken then sold the carloads of fertilizer at substantial profits to customers who either thought they were dealing with Hastings or would have purchased the fertilizer directly from Hastings.[3]

In August 1974 McCracken, Gilbertson, and Conzemius, together with William Am-

---

3. Upper Midwest was able to realize such a large profit in part because the price Hastings obtained from its principal suppliers was considerably less than the open market price.

mentorp, formed another corporation, Rice County Fertilizer Company. Officers of Rice County were McCracken, president; Gilbertson, vice-president; Conzemius, treasurer; and Ammentorp, secretary. Rice County opened a post office box and a checking account; the signature card for the checking account was signed only by Conzemius. The evidence showed that McCracken purchased six carloads of fertilizer on behalf of Rice County from Hastings, which were then rebilled through Upper Midwest for sale to Upper Midwest's customers. Upper Midwest realized a gross profit from the sale of all carloads of fertilizer in excess of $100,000. The evidence also established that Hastings' Board of Directors was neither notified of these transactions nor informed of McCracken's or Gilbertson's role in Upper Midwest/Rice County.

The evidence also established McCracken was responsible for or directed most of the day-to-day mechanics of the scheme. McCracken handled all the solicitation on behalf of Upper Midwest, often using Hastings' telephones. All of the carload shipments sold by Upper Midwest were sold from Hastings' railroad sidings directly to third-party purchasers, McCracken signing both the shipping orders and rebilling orders. McCracken personally prepared Hastings' sales tickets for the carload sales to Upper Midwest or Rice County. McCracken then either prepared invoices on behalf of Upper Midwest or Rice County or gave the necessary information to a bookkeeper employed by both corporations, who mailed the prepared invoices to Upper Midwest's customers. By preparing both Hastings and Upper Midwest's invoices, McCracken determined not only Hastings profit but also Upper Midwest's profit. In some instances carloads of fertilizer were sold before the paperwork was completed.[4]

The mailings associated with these transactions were the bases for the counts under the indictment. Each of the mailings charged is in furtherance of the scheme. Counts I, IV and V are invoices mailed from Upper Midwest to purchasers of fertilizer, including Hastings, in order to accomplish payment to Upper Midwest. Count VII is a check from Hastings to Upper Midwest in payment for fertilizer sold to Hastings at an inflated value. Counts II, III and VI constitute billings from Hastings to the defendant's companies and payments in return.

*McCracken's Testimony.*

McCracken acknowledged his participation in the various transactions. His justification for making the various sales and purchases was based on a tax problem at Hastings which he thought required profit margins on Hastings' wholesale accounts be kept at a minimum in order to preserve its tax exempt status. He also testified that although his dual role was not known to Hastings' Board of Directors, he assumed it was proper for him to act as he did. He stated he had informed Gilbertson at the outset of his intention to leave Hastings and his continued employment with Hastings thereafter was due to Gilbertson's deliberate delay in obtaining a replacement. Under these circumstances McCracken argues that the evidence precludes a finding of intent. We cannot agree.

▪ Intent to defraud may be inferred from the facts and circumstances surrounding the transactions. *United States v. Cady,* 567 F.2d 771, 774 (8th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *United States v. Nance,* 502 F.2d 615, 618 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975); *United States v. Porter,* 441 F.2d 1204, 1210 (8th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971). The question. for decision is whether the facts and circumstances of this case, viewed in light most favorable to the jury's verdict, are sufficient to establish McCracken's intent to defraud.

4. A carload of fertilizer, shipped August 9, 1974, arrived at the Hastings yard on August 17, 1974. Invoices showed that the carload was sold by Hastings to Rice County on September 16, 1974, was sold by Rice County to Upper Midwest on August 27, 1974, and was sold by Upper Midwest to one of its customers on August 23, 1974.

We hold the government produced sufficient facts from which a jury could find that McCracken was a knowing and willing participant in the fraud. The jury weighed McCracken's explanation along with all the other factual circumstances proven. The evidence clearly shows that after May 1974 McCracken routed all of Hastings' sales of fertilizer to Upper Midwest and Rice County; that McCracken determined the markup resulting in profit to his own companies; and that McCracken often held himself out as Hastings' agent, calling from its telephones, when in fact the sales were routed through McCracken's companies.

The jury deliberated in this case less than two hours. We agree with the government that the proof was overwhelming that McCracken knowingly used his fiduciary position in Hastings to create gain for his own companies. *See United States v. George,* 477 F.2d 508, 512–14 (7th Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 49, 38 L.Ed.2d 61 (1973). The overall evidence also sufficiently demonstrates that the use of the mails was an integral part of the scheme.

The judgment of conviction is affirmed.