UNITED STATES of America, Appellee,

v.

Joseph Maria ANDRADE, Appellant.

UNITED STATES of America, Appellee,

v.

Benjamin Calvin RILEY, Appellant.

Nos. 85–5031, 85–5032.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1985.

Decided April 14, 1986.

See also, 605 F.Supp. 1497.

**522**

Andrew Birrell, Neal J. Shapiro, Minneapolis, Minn., for appellants.

Peter M. Connors, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge and BOWMAN, Circuit Judge.

---

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

ROSS, Circuit Judge.

Joseph Andrade and Benjamin Riley appeal from a final judgment entered in the district court [1] in accordance with a jury verdict finding them guilty of mail fraud, wire fraud, and conspiracy in violation of 18 U.S.C. §§ 1341, 1343 and 371 (1982). For reversal, Andrade and Riley argue that: 1) they were denied certain constitutional rights by the government's use of peremptory challenges to exclude black prospective jurors from the jury panel; 2) there was insufficient evidence to convict them of the crimes they were charged with; and 3) the district court erred in denying their motions for severance on the grounds that they were misjoined and/or prejudicially joined. Additionally, Andrade argues individually that the prosecutor made an improper objection which constituted prosecutorial misconduct and that the district court erred in admitting into evidence an FBI agent's notes taken during an interview with Andrade. For the reasons discussed below, we affirm their convictions.

## I. FACTS

On June 6, 1984, appellants Andrade and Riley were indicted by a federal grand jury in a multicount wire fraud, mail fraud, and conspiracy indictment along with codefendants, Walter Little, Curtis Bell, Vanasa Ford, Judy Copeland, Joshua Ivory, and Samuel Powers. The codefendants were accused of participating in a scheme devised by Little to defraud several commercial airlines. The scheme consisted of obtaining airline tickets by means of the unauthorized use of various credit card numbers. The tickets so obtained were then either sold, used, or cashed-in.

Appellant Andrade was accused of obtaining buyers for the fraudulently obtained tickets and charged with two counts of mail fraud, eight counts of wire fraud, and one count of conspiracy. Appellant

Riley, an airline employee, was accused of giving cash refunds for some of the fraudulently obtained tickets and charged with one count each of mail fraud, wire fraud, and conspiracy. The remaining codefendants were charged with other activities connected with the scheme, for example, obtaining the credit card numbers, ordering the tickets, or taking delivery of the tickets. Following the indictment the codefendants were scheduled for a joint trial.

A joint pretrial motion hearing was conducted. Among other matters, the severance motions of Andrade and Riley were heard and denied. Prior to trial, five of the codefendants, Little, Bell, Ford, Copeland, and Powers pled guilty to various counts. The joint trial of the remaining defendants, Andrade, Riley, and Ivory commenced on November 5, 1984.

During voir dire the government used two of its peremptory challenges to strike the only two black persons from the jury panel. Because all three defendants were black, Andrade objected. At a bench conference, Andrade's counsel admitted to having previously represented one of the black venirepersons and conceded that the government had a proper reason to strike her. However, he maintained that the government's use of its peremptory challenge of the other black person was based solely on race and therefore in violation of defendants' constitutional rights. Appellant Andrade moved for a mistrial on this ground and Riley joined the motion.

The government opposed the motion and explained the reason it struck the remaining black venireperson, after expressly stating that it had no obligation to do so. The prosecutor stated that he struck the black male because he lived in the same neighborhood where about three-quarters of these airline tickets were mailed, or at least a good half of them were mailed. The court requested briefs and affidavits on the issue. After these were submitted the court denied the motion for a mistrial.

The case proceeded to trial which lasted ten days. The trial record, construed in the light most favorable to the government reveals the following pertinent facts. Sometime prior to 1984, Walter Little devised the scheme to defraud certain commercial airlines. Little obtained credit card numbers from Joshua Ivory who worked at a Montgomery Wards store in Minnesota and Samuel Powers who worked at J. Riggins and Company, a clothing store in Minnesota. Using the credit card numbers taken from charge receipts or carbons of charge receipts, Little ordered, or had others order for him, airline tickets by phone and mailed to his address or to the address of others. Little either used, sold, or cashed-in these tickets which had been fraudulently obtained by the unauthorized use of credit card numbers.

At trial, representatives of ten airlines testified that the tickets entered as exhibits in this case were issued by their telephone ticket offices and were purchased by use of credit cards. They testified that payment on each ticket had been refused and that the individual airlines suffered the consequent loss. Approximately 43 credit card holders testified or provided by stipulation that their credit card numbers had been used to order airline tickets without their authorization, shortly after they had made purchases at the Montgomery Wards and J. Riggins stores where Ivory and Powers worked.

Two of the codefendants who pled guilty prior to trial testified. Vanasa Ford testified that she ordered several tickets using credit card accounts that she didn't own and that she took delivery of the mailed tickets for Walter Little. Curtis Bell testified that he lived with Little or visited him daily during the period covered in the indictment. Bell stated that he picked up tickets at the airport for Little and allowed Little to use his bank account to deposit airline refund checks.

There was evidence that Andrade obtained customers to purchase the tickets that Little had fraudulently obtained. At trial 13 people testified that they had obtained half-price airline tickets through Andrade. Andrade testified at trial and ad-

mitted that he got the buyers for Little but denied any criminal knowledge or intent.

According to the government's evidence appellant Riley participated in the scheme by reissuing cash airline tickets for tickets purchased with credit cards and in some instances by giving cash refunds for the fraudulently obtained tickets. Three refund drafts issued by Riley turned up in an account under Little's control. Riley did not testify at trial but the gist of his defense was that he mistakenly reissued cash tickets or refunds with no knowledge of Little's scheme. It was established at trial that Riley knew Little and used to live next door to him.

The jury convicted both appellants and Ivory of all counts charged against them in the indictment. Following the denial of post-trial motions, Andrade was sentenced to a term of imprisonment of 15 months on each count to be served concurrently, and Riley was sentenced to a term of imprisonment of 20 months on each count to be served concurrently. Ivory was also sentenced, but only the appeals of Andrade and Riley are now before this court.

## II. DISCUSSION

### A. Peremptory Challenge

■ The first issue in this appeal is raised by both Andrade and Riley. They contend that the prosecutor violated their fourteenth amendment right to equal protection and their sixth amendment right to trial before an impartial jury drawn from a fair cross-section of the community by intentionally excluding blacks from the jury solely because of their race. The government maintains that the district court's refusal to grant a mistrial on these grounds was proper because the appellants failed to establish either a systematic exclusion as

required in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) or an exclusion for an impermissible reason, and further because this court in its en banc decision of *United States v. Childress*, 715 F.2d 1313, (8th Cir.1983) (en banc), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984) concluded "that there [was] no sixth amendment exception to the equal protection analysis in *Swain*." *Id.* at 1318.

To rebut the government's contention that the appellants' arguments are controlled by *Swain* and *Childress*, appellants argue that *Swain* does not apply to this case because the prosecutor stated his reasons on the record, that *Swain* is under attack, and that this court should reconsider *Childress* in light of recent developments in this area.[2]

Because of the record in this case we need not undertake a re-examination of the law of peremptory challenges. To do so at this time would be imprudent and unnecessary.[3] We have previously suggested that

> the potential for racially motivated misuse of the government's peremptory challenges might be minimized if the trial court exercised its "supervisory powers over the trial of criminal cases ... [by requiring] the prosecutor to discharge his [or her] duties in a fair, even, and constitutional manner, and thus ensure that no potential juror is denied the privilege of serving upon a jury solely because of his [or her] race."

*Childress, supra,* 715 F.2d at 1321 (citations omitted). Having reviewed the record in this case, it is apparent to us that the district court did so here.

The record reflects that prior to the exercise of each side's peremptory challenges,

---

**2.** On December 11, 1985, the Supreme Court heard oral argument in the case of *Batson v. Kentucky, cert. granted,* — U.S. —, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985), a sixth amendment case. Also, the Sixth and Second Circuits have recently held that the discriminatory use of peremptory challenges violates the sixth amendment and that a defendant may establish such in his own case without proof of systematic exclusion. *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985)

and *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984).

**3.** *Swain* has not been overruled and *Childress* remains the law of this circuit. This panel has no power to overrule a prior en banc decision of this court. *See United States v. Norton,* 780 F.2d 21, 23 (8th Cir.1985).

defense counsel for Andrade raised the issue of the impropriety of the government using its peremptory challenges to strike all black prospective jurors. In response, the prosecutor stated for the record that no decision would be made based on a juror's race. At the appropriate time the government peremptorily struck seven persons from the jury panel, two of whom were black. Because no black persons remained on the jury, appellants moved for a mistrial.

The district court exercised its supervisory power, took the motion under submission, and requested briefs and affidavits on the matter. The prosecutor stated in his affidavit that he struck the black female because she had been represented by one of the defense attorneys and the black male because he lived in the same neighborhood, as Johnny Jones, to whom a large percentage of the fraudulent airline tickets were mailed for over one year. Andrade's attorney stated in his affidavit that there was a reasonable basis to strike the black female but that the prosecutor's stated reason for striking the black male was a subterfuge for the real reason which was his race. Following these submissions and some oral argument, the district court denied appellants' motion for a mistrial.

Our review of the prosecutor's explanation for exercising his peremptory challenges against the two black persons convinces us that the challenges were not improper in the context of this particular case. It seems clear that the government's rationale behind its challenges was related to concerns about the jurors' familiarity with lawyers, parties or locations relevant to this case, and not motivated by race. Under these circumstances there is no factual support for appellants' contentions that the prosecutor excluded blacks from the jury in this case for impermissible reasons and hence no basis for any constitutional claims. *See, e.g., United States v. Jackson,* 696 F.2d 578, 593 (8th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). Having found that the record supports the government's claim that the prosecutor's peremptory chal-

lenges were exercised for permissible trial related concerns and not race, we reject appellants' contentions that their constitutional rights were violated and hold that the district court correctly denied the motion for mistrial.

### B. Sufficiency of the Evidence

Both Andrade and Riley argue that the evidence was insufficient to sustain their convictions on either the conspiracy count or the mail and wire fraud counts. In reviewing challenges to the sufficiency of the evidence, we must view the evidence in the light most favorable to the government and sustain the jury's verdict if there is substantial evidence in the record to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Garcia,* 785 F.2d 214, 225 (8th Cir.1986); *United States v. Casperson,* 773 F.2d 216, 221 (8th Cir. 1985). The government is entitled to all inferences that reasonably may be drawn from the evidence. *Garcia, supra,* at 225; *Casperson, supra,* 773 F.2d at 221. Moreover, "[t]he evidence need not 'exclude every reasonable hypothesis except that of guilt[; it is enough] that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty.'" *United States v. Kaminski,* 692 F.2d 505, 512 (8th Cir.1982) (citations omitted).

### 1. Conspiracy Count

■ Andrade and Riley were convicted of participating in a single conspiracy to defraud certain airlines in violation of 18 U.S.C. § 371. Both argue that the evidence did not support the existence of a single conspiracy or their participation in it.

Under 18 U.S.C. § 371 conspiracy is defined as an agreement to commit an offense or to defraud the United States, attended by an act of one or more of the conspirators to effect the object of the conspiracy. *United States v. Pintar,* 630 F.2d 1270, 1275 (8th Cir.1980). The essence of a conspiracy is an agreement to commit an illegal act. *United States v. Snider,* 720

F.2d 985, 988 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). However, the agreement need not be formal or express and may consist of nothing more than tacit understanding. *Pintar, supra,* 630 F.2d at 1275. The agreement may be established by circumstantial evidence, including the conduct of the conspirators and any attending circumstances. *Id.*

Further, an agreement may include the performance of many transactions, and new parties may join or old parties terminate their relationship with the conspiracy at any time. *Garcia, supra,* at 225. Multiple groups and the performance of separate crimes or acts do not rule out the possibility that one overall conspiracy exists. *Snider, supra,* 720 F.2d at 988. Moreover, "[o]nce the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him of knowing participation in the conspiracy." *United States v. DeLuna,* 763 F.2d 897, 924 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985).

After reviewing the lengthy trial transcript and the wiretap tapes that the jury heard, we conclude there was sufficient evidence to prove one overall conspiracy and to support the jury's verdict as to each appellant's participation in that conspiracy. We briefly summarize the evidence establishing the conspiracy and then the evidence implicating each appellant.

As stated above in our recitation of the facts, the record reveals ample evidence of a conspiracy to defraud certain airlines coordinated by Walter Little. The government established that airline tickets were fraudulently obtained by the use of stolen credit card numbers. There was evidence to infer that Joshua Ivory and Samuel Powers provided Little with credit card numbers. There was direct evidence that Vanasa Ford, Walter Little, and Joseph Andrade ordered airline tickets by phone using credit card numbers for cards they did not own.

There was direct evidence that tickets fraudulently obtained by Little were cashed-in, sold, or used. There was direct evidence that Joseph Andrade provided purchasers for some fraudulently obtained tickets and there was circumstantial evidence that Benjamin Riley facilitated the cashing of some of these fraudulently obtained tickets.

We think this evidence supports the conclusion that there was one overall conspiracy, namely Little's "ticket business", and that it had one common goal and that was to defraud the airlines. The success of Little's "ticket business" depended upon each participant performing his or her part in furtherance of the common object of the scheme and it was that common purpose which motivated each participant. One man commanded the entire network but all the participants' conduct and transactions were interrelated and interdependent. While agreement is an essential component of conspiracy, the totality of the circumstances may establish "that the successive stages and the relationships between and among the co-conspirators [constitute] the various phases of one basic and overriding plan." *United States v. Wilson,* 497 F.2d 602, 604–05 (8th Cir.) (footnote omitted), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974).

Whether a scheme is one conspiracy or several is a jury question, since it is a question of fact as to the nature of the agreement. *Id.* at 604. Admittedly the evidence of agreement in this case was circumstantial, but a conspiracy is seldom proved by direct evidence, and circumstantial evidence is no less probative than direct evidence. *See United States v. Michaels,* 726 F.2d 1307, 1311 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Our review of the record reveals that it was reasonable for the jury to infer from the nature and scope of the scheme, the commonality of goals and the identity of the participants that a single conspiracy existed.

The evidence implicating Andrade in this conspiracy was substantial. There was evi-

dence that Andrade met Little in Minneapolis in the summer of 1983 and sometime thereafter began to order airline tickets through Little. There was pen register and wiretap evidence linking Andrade with Little at the times relevant to this case. The government established that Andrade acted as a broker of airline tickets fraudulently obtained by Little. There was evidence that Andrade received two free airline tickets from Little in exchange for obtaining customers for Little. In addition, there was evidence that Andrade did $2000 worth of ticket business with Little in one month, that Andrade himself ordered tickets for Little using credit card numbers, and that Andrade knew other people ordered and received tickets at Little's direction.

The evidence implicating Riley is somewhat weaker, but we believe there is sufficient circumstantial evidence to link him to the conspiracy. Riley, a Republic Airlines employee, knew Little and at one time lived next door to Little. The government introduced the records of 12 separate Republic Airlines ticket and refund transactions that revealed that Riley had improperly reissued a cash airline ticket in exchange for a ticket purchased with a credit card. According to the testimony of one airline employee, a ticket purchased with a credit card could not be exchanged for a cash ticket or for cash refund. Another airline employee stated that she had never seen any other agent make as many mistakes as Riley. In addition, there was evidence that, in each instance, Riley issued a refund draft for the cash airline tickets that he had just reissued, and in some cases, Riley himself gave a refund in cash from his own cash drawer. There was also evidence that at least three Republic Airlines' refund drafts issued by Riley were deposited in a bank account controlled by Little. Lastly, the government's handwriting expert testified that the handwriting samples given by Riley during the investigation appeared distorted, but that samples of Riley's handwriting made prior to the investigation, led the expert to conclude definitively that Riley had written at least some of the refund

drafts with his identification number on them.

### 2. Mail and Wire Fraud Counts

Andrade and Riley were also convicted of various substantive counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Both contend that the evidence was insufficient to establish that they acted with the requisite criminal intent to defraud.

In order to sustain a charge of mail fraud under 18 U.S.C. § 1341 the government must prove (1) the existence of a scheme to defraud, and (2) the use of the mails for the purpose of executing the scheme. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *Kaminski, supra,* 692 F.2d at 511; *see also United States v. Lane,* —— U.S. ——, 106 S.Ct. 725, 733, 88 L.Ed.2d 814 (1986). The elements of wire fraud, 18 U.S.C. § 1343 are identical except use of the wires rather than the mails must be shown. 18 U.S.C. §§ 1341 and 1343.

An essential element to establishing the substantive fraud counts is a showing that Andrade and Riley acted with intent to defraud. *Casperson, supra,* 773 F.2d at 221. However, intent to defraud may be inferred from the facts and circumstances surrounding the transactions. *United States v. McCracken,* 581 F.2d 719, 722 (8th Cir.1978). Thus, the question for decision is whether the facts and circumstances of this case, viewed in the light most favorable to the jury's verdict, are sufficient to establish intent to defraud with respect to both appellants.

■ The evidence of Andrade's intent consisted primarily of statements he made to Little on the telephone during the court-approved wiretap and statements Andrade made during his interview with investigators while being questioned at the Seattle airport on March 8, 1984. The jury heard tapes of twelve conversations between Andrade and Little in which Andrade stated: that he disliked the prepaid ticket method because he was scared the airlines would

catch onto something; that he liked one particular airline because it was easy to deal with it; that Little was making good money considering he wasn't paying any taxes; that Little wouldn't lose anything if he didn't get paid on the tickets; that once he (Andrade) broke in his customers to flying under a different name there was no problem; and that if Little took care of his end he (Andrade) would take care of his end. Also on the tapes, Little stated: that he was running out of numbers again; that he had other people ordering tickets for him; that some of these people moved so there would be a new address; that Andrade should order two tickets for him and use the certain credit card numbers. The government also introduced its version of statements Andrade made during his March 8, 1984 interview. FBI Agent Brown testified, and his notes support, that Andrade stated that Little asked him to get credit card numbers and that after that request he really got suspicious. Another statement attributed to Andrade was that he realized in the back of his mind that something was wrong but that he was caught up in it and kept going thinking it was right; that human instinct took over. At trial Andrade admitted saying something like the human instinct remark but expressly denied that he told Brown that Little ever asked him for credit card numbers.

We have little trouble concluding that it was reasonable for the jury to infer from Andrade's statements, both on the phone to Little and during the interview, that Andrade acted with an intent to defraud and was a knowing participant in Little's scheme. The jury made a credibility determination on the question of Andrade's in-tent and there was credible, admissible evidence to support that determination.

The evidence of Riley's intent was all circumstantial, but nonetheless sufficient for the jury to find him guilty of one count of mail fraud and one count of wire fraud. The government established that Riley reissued a cash airline ticket and refund draft in September 1983 in exchange for a credit card ticket ordered over the phone and mailed from Atlanta to Minneapolis. That he acted with an intent to defraud was reasonably inferable from the totality of facts and circumstances surrounding these events. Taken together, Riley's six years of experience as a ticket agent, and the number of times he reissued cash airline tickets and refund drafts in exchange for credit card tickets, each time omitting the credit card numbers, support the jury's determination that Riley was not acting innocently when he reissued the cash ticket and refund draft. Accordingly, we find that the evidence was sufficient to sustain Riley's conviction for one count of mail fraud and one count of wire fraud.

### C. Motions to Sever

Next we consider the propriety of a joint trial of these appellants and whether the district court properly denied their motions to sever. Appellant Andrade argues that he was improperly joined in violation of FED.R.CRIM.P. 8(b).[4] In addition both Andrade and Riley contend that they suffered prejudice from their joint trial warranting relief pursuant to FED.R.CRIM.P. 14.[5]

Appellant Andrade urges Rule 8(b) misjoinder first on the ground that the indictment did not allege a series of acts or transactions constituting parts of a common enterprise in its substantive counts and secondly, on the ground that the indict-

---

4. Rule 8(b) provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

5. Rule 14 provides in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

ment in reality alleged multiple conspiracies, not a single conspiracy. As support for his first contention Andrade relies principally on *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). In *Bledsoe,* a majority of the panel held that charges of securities fraud against one defendant were improperly joined with securities fraud and racketeering charges against other defendants, and vacated some of the convictions. *Id.* at 657.[6] The asserted basis for Andrade's second contention is that the single conspiracy count charging all the defendants is unsupported by the evidence because there was not one overall scheme.[7]

Rule 8(b) permits the joinder in a single indictment of two or more defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 8(b) requires that there be some common activity involving all the defendants which embraces all the charged offenses, but it is not necessary that each defendant have participated in each act or transaction of the series. *United States v. Wofford,* 562 F.2d 582, 585 (8th Cir.1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 507 (1978). The prerequisites for joinder of defendants under Rule 8(b) are liberally construed, *Bledsoe, supra,* 674 F.2d at 655, and persons charged with having been involved in a single conspiracy should ordinarily be tried together. *United States v. Rochon,* 575 F.2d 191, 197 (8th Cir.), *cert. denied,* 439 U.S. 979, 99 S.Ct. 564, 58 L.Ed.2d 650 (1978). Generally, the propriety of the joinder must appear on the face of the indictment. *United States v. Sanders,* 563 F.2d 379, 382 (8th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 767 (1978).

The present indictment reveals a basis for joinder on its face. In count one it was alleged that the defendants aided and abetted each other to devise a scheme to defraud various airline companies. Further the indictment included a single conspiracy count alleging that all the defendants conspired to devise a single scheme to defraud various airline companies, a scheme described in the substantive counts of the indictment. This was a sufficient allegation that they "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses" to render the initial joinder proper. *Jackson, supra,* 696 F.2d at 585 n. 2; *Sanders, supra,* 563 F.2d at 382–83.

This is not a case like *Bledsoe* where the indictment did not allege or even suggest the existence of a scheme encompassing the conduct in all the counts. 674 F.2d at 656. Unlike *Bledsoe,* the indictment here links each defendant with the overall credit card-airline ticket scheme. Each substantive count specifically refers to this scheme and describes the defendants' conduct as it relates to the scheme. We, therefore, hold that joinder was proper in this case under Rule 8(b).

The other aspect of appellants' joinder argument relates to FED.R.CRIM.P. 14. Both Andrade and Riley argue that they were entitled to discretionary Rule 14 relief and allege that prejudice resulted

---

6. Although the majority in *U.S. v. Bledsoe,* 674 F.2d 647 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982), thought the harmless error doctrine was not applicable to Rule 8(b), the misjoinder was appraised in terms of harmless error, and found to be clearly prejudicial. *Id.* at 658. We note that the Supreme Court has recently held that misjoinder under Rule 8(b) is subject to the harmless-error rule. *U.S. v. Lane,* —— U.S. ——, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Because of our disposition of Andrade's Rule 8(b) claim, we need not discuss the effect of *Lane* on our case.

7. Having agreed that a single conspiracy existed and having affirmed the conspiracy convictions, we need not discuss this argument. The existence of a single conspiracy lends prima facie correctness to the joinder of the mail fraud and wire fraud counts. *See United States v. Lemm,* 680 F.2d 1193, 1205 (8th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983).

from the district court's refusal to sever their trials. Rule 14 authorizes a trial court to grant a severance and order separate trials if a defendant would be prejudiced by a joint trial. Appellants argue that they were prejudiced because the joint trial presented complex issues involving numerous defendants playing different roles in the alleged scheme, lasted ten days, and created the possibility for a conviction by a spillover effect.

In order to prevail on their claim that the district court abused its discretion in denying their motions to sever pursuant to Rule 14, appellants must make a showing of real prejudice to themselves individually. *United States v. Miller,* 725 F.2d 462, 467 (8th Cir.1984). In the context of an allegation that incriminating evidence presented in a joint trial has "spilled over", we must consider whether the jurors were able to follow the trial court's cautionary instructions and compartmentalize the evidence against each defendant on each count individually. *DeLuna, supra,* 763 F.2d at 919–20. Appellants must demonstrate that the jury was unable to compartmentalize the evidence as it related to the separate defendants and such a demonstration requires more than a mere showing of a better chance of acquittal at a separate trial. *United States v. Milham,* 590 F.2d 717, 722 (8th Cir.1979).

Our review of the record convinces us that appellants have not met this burden. The jury could easily have separated and appraised the independent evidence against each appellant. The roles of the individual appellants in the ticket scheme were sufficiently distinct that the jury, aided by the court's instructions, could compartmentalize the evidence against each defendant. *See United States v. Robinson,* 774 F.2d 261, 266 (8th Cir.1985). The potential for jury confusion in terms of the number of counts (only 18) and the number of defendants (only 3) was minimal, the issues were not complex, and the trial was not inordinately lengthy. Having found that appellants failed to make a showing of real prejudice, we conclude that it was not an abuse of discretion for the district court to deny appellants' motions for severance pursuant to Rule 14.

### D. Prosecutorial Misconduct

Appellant Andrade's next allegation of error concerns the nature of the prosecutor's objection to the proposed admission of an exhibit. During his re-direct examination Andrade offered an exhibit of classified ads from newspapers showing that airline tickets could be purchased for a discount. Because the newspapers postdated Andrade's arrest, the prosecutor objected to the admission of the exhibit as having been "manufactured for trial." Defense counsel objected to the remark, moved that it be stricken, and that the jury be advised to disregard it. The trial court struck the remark from the record and instructed the jury to disregard it. After some additional questions, Andrade reoffered the exhibit, the government withdrew its objection, and the exhibit was received into evidence. Subsequently, Andrade made a motion for a mistrial based upon the prosecutor's statement which the trial court denied.

On appeal Andrade contends this remark was so prejudicial that a mistrial should have been granted because it left the jury with the impression that Andrade, who was accused of fraud, was attempting to defraud them by manufacturing evidence for trial. Andrade suggests that when this prejudicial effect is weighed against the weakness of the government's case against him, a reversal is warranted. We disagree.

When reviewing an allegation of reversible prosecutorial misconduct this court has considered whether the prosecutor's remarks were in fact improper and, if so, whether the remarks prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985). Further, there are three factors that the courts usually consider to determine the prejudicial effect of prosecutorial misconduct: 1) the cumulative effect of the misconduct; 2) the strength of the

properly admitted evidence; and 3) the curative actions taken by the trial court. *Id.* at 460; *see United States v. Singer*, 660 F.2d 1295, 1305 (8th Cir.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982).

 After applying this analysis to the facts of this case, we have no difficulty in concluding that the prosecutor's remark was not sufficiently prejudicial to warrant reversal of Andrade's convictions. Although we believe the prosecutor's remark was improper, a review of the record does not disclose any significant prejudicial effect on the fairness of the trial. This is not a case like *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) where the prosecutor made repeated improper remarks. Here we have a single, isolated remark. In addition, although the evidence of Andrade's guilt was not overwhelming, there was ample convincing evidence to support his conviction. And lastly, the district court gave a specific curative instruction immediately after the statement was made. The district court cured any potential prejudice by striking the remark and advising the jury to disregard it. The potential for prejudice was further minimized by the subsequent admission of the exhibit about which the prosecutor's remark was made. Any negative inference created by the remark was thoroughly dispelled by the act of the prosecutor withdrawing his objection and the court's admission of the exhibit in the presence of the jury.

 The district court has broad discretion to determine whether an improper statement so taints the trial that a mistrial should be granted. *United States v. Alley*, 661 F.2d 718, 721 (8th Cir.1981). Since appellant Andrade has failed to show that the prosecutor's remark, considered in the context of the whole trial, was so prejudicial as to deprive him of a fair trial, we hold that the district court did not abuse its discretion in denying his motion for a mistrial based upon the prosecutor's remark.

## E. Admission of Agent's Notes

We turn now to Andrade's last allegation of error. Andrade claims that the district court committed reversible error in admitting into evidence three pages of handwritten notes made by FBI Agent Brown while conducting a preindictment interview of Andrade.

The subject of the Andrade interview and Agent Brown's notes arose early in the trial. During the direct examination of Detective Salitros, the government's second witness, the prosecutor asked Salitros if Little and Andrade were interviewed in Seattle to which he answered yes. However, on cross-examination by Andrade's counsel, Salitros was asked to respond to at least 45 questions concerning the nature of the interview and what Andrade said. On re-direct Salitros was shown Brown's notes taken during the interview to refresh his memory. Salitros testified that he didn't have independent recollection of the exact words that Andrade used, that his recollection differed a little bit from the notes and that inaccuracies in reports were possible.

Later in the trial, Investigator Berry, another government witness who was present at the Andrade interview and who wrote his own report afterwards, testified as to his memory of the interview. On cross-examination Andrade's counsel elicited evidence of at least two mistakes in Berry's written report. Then Berry was asked whether Agent Brown had the benefit of Berry's report before he wrote his report to which Berry answered that he didn't know.

Sometime later in the trial near the end of the government's case, Agent Brown testified that Andrade stated during the interview that Little had asked him to obtain credit card numbers and after that he really got suspicious and felt something was wrong, but that human instinct took over. Shortly before the close of its direct examination of Brown, the government offered the original notes which corroborated Brown's in-court testimony, in light of the questioning of Salitros and Berry. Andrade objected on hearsay grounds, and

then at a bench conference on the grounds that they were not verbatim notes and that there was no claim of recent fabrication against Brown. The prosecutor stated that the notes were being offered as prior consistent statements to rebut the implied allegation of fabrication raised by the cross-examination of Salitros and Berry and to corroborate Brown's testimony about Andrade's statements concerning Little's request for credit card numbers and statement about human instinct.

The trial court requested briefs on the issue and took the matter under advisement. Direct examination of Brown was completed and cross-examination by Andrade's counsel began. Following an overnight recess and submission of briefs, the trial court ruled orally, without comment, that the notes would be received into evidence.

The cross-examination of Brown continued and Andrade's counsel adopted the strategy of using the notes to vigorously cross-examine Brown on his recollection of what Andrade said during the interview. Upon redirect the prosecutor referred to the notes and they were shown to the jury. Later during cross-examination of Andrade, the prosecutor used the notes to impeach Andrade. He admitted mentioning something like the human instinct remark but denied saying that Little asked him to get credit card numbers or that he knew something was wrong after Little's request.

On appeal Andrade argues that the notes should have been excluded because they were hearsay and not properly admitted as prior consistent statements under FED.R. EVID. 801(d)(1)(B). Rule 801(d)(1)(B) provides that an extrajudicial statement is not hearsay if "[t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or

implied charge against him of recent fabrication or improper influence or motive * * *." Andrade claims that the admission of the notes under Rule 801(d)(1)(B) was improper because Brown had not been charged with "recent fabrication", and that even if Brown had been charged with fabrication the government did not show that the notes were created prior to the motive to fabricate them arose. Andrade relies on *United States v. Quinto*, 582 F.2d 224 (2d Cir.1978) in which the Second Circuit concluded that an IRS agent's memorandum was improperly admitted as a prior consistent statement under Rule 801(d)(1)(B) because the government did not demonstrate that the prior statement was made before the supposed motive to falsify arose. *Id.* at 234–35.

It is the government's position that Brown's notes were properly admitted pursuant to the rule. The government asserts that an inference that Brown fabricated his testimony was created earlier in the trial during cross-examination of Agents Salitros and Berry who were also present during the interview with Andrade. Secondly, the government contends that Andrade opened the door for rebuttal when he introduced the subject of the Brown notes during his cross-examination of Salitros and Berry. Lastly, the government argues that the notes were admissible under the principle of completeness embodied in FED. R.EVID. 106.[8]

The admission or rejection of a prior consistent statement is addressed to the sound discretion of the trial court and will not be reversed on appeal except when there has been a prejudicial abuse of discretion. *United States v. Blankinship*, 784 F.2d 317, 320 (8th Cir.1986); *United States v. Nelson*, 735 F.2d 1070, 1072 (8th Cir.1984); *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980). In the present case the government offered Brown's notes as prior consistent statements in an at-

---

**8.** Rule 106 provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce

any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

tempt to rehabilitate and support him as a witness. The extent to which rehabilitative evidence may be received is left to the sound discretion of the trial court. *Id.; Hanger v. United States,* 398 F.2d 91, 105 (8th Cir.1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969).

 Based upon our careful review of the trial record concerning this issue, we find that the admission of the prior consistent statements was appropriate under the circumstances. Andrade's extensive cross-examination of Salitros and Berry constituted a well-planned attack on the credibility of Brown. Andrade himself introduced the subject of what he said during the interview during the cross-examination of Salitros, and elicited evidence of facts that contradicted what he knew to be in Brown's notes. Then during the cross-examination of Berry, he deliberately created the inference of inaccuracies in the notes and left the lingering suggestion of collaboration between Berry and Brown. These attacks were sufficient to constitute an implied charge of fabrication and the government therefore was entitled to introduce the statements to rehabilitate and support Brown's in-court testimony which was entirely consistent with the notes. It is apparent to this court that the notes were introduced in the context of an implied challenge to Brown's account of what Andrade said and were properly admitted by the district court. And Andrade's reliance on the Second Circuit's ruling in *Quinto, supra,* does not convince us otherwise.[9]

 We therefore hold that it was not an abuse of discretion for the district court to admit Brown's notes under the circumstances of this case. Andrade has demonstrated no error in the court's ruling. We note also that this rehabilitative use of prior consistent statements is in accord with the principle of completeness promot-

ed by Rule 106. *United States v. Harris,* 761 F.2d 394, 400 (7th Cir.1985).

## III. CONCLUSION

For the reasons stated above, we affirm the convictions of both appellants in all respects.

---

9. The Second Circuit itself has begun to re-examine the *Quinto* holding. In *United States v. Rubin,* 609 F.2d 51 (2d Cir.1979), *aff'd on other grounds,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) the court permitted the admission of an agent's preindictment interview notes, adopted by another person as accurate, under the doctrine of completeness in FED.R.EVID. 106. *Id.* at 63. Further, in his concurring opinion in *Rubin,* Judge Friendly expressly disapproved of certain portions of the *Quinto* opinion. *Id.* at 69.